May it please the Court, James Siegel on behalf of Yelp. I'd like to reserve three minutes of my time for rebuttal. Younger v. Harris sets forth a narrow exception to federal courts' virtually unflagging obligation to hear the cases within their jurisdiction. But as courts have consistently recognized, Younger must give way when a state action is brought with a desire to harass or is conducted in bad faith. That is the case here. Attorney General Paxton attacked Yelp for publishing an advisory stating that crisis pregnancy centers typically provide limited medical services and may not have licensed medical professionals on site. He did so even though he recognized that that was literally true, even though he had no evidence that any consumer was misled by that statement, and even though that statement could not possibly constitute commercial speech to which the Texas DTPA, which is the state statute that he brought this action under, could apply to it. Younger's bad faith exception is thus satisfied for two independent reasons. First, the Texas action is objectively meritless. That is, it was brought without a reasonable expectation of obtaining a valid judgment against Yelp. Clearly established principles of both First Amendment law and Texas law foreclosed the action. Attorney General Paxton's theory is that Yelp's advisory was misleading. It was not. And even showing that it was would require evidence of consumers being misled, which there is no such evidence. But even if it were misleading, Yelp could be punished for that speech only if its warning to consumers was commercial speech. So let me ask you a very preliminary question. What's going on right now with the Texas appeal? So it was dismissed for lack of personal jurisdiction over Yelp. Right, that was in the trial court, right? Yes, Your Honor, and it was appealed. It's fully briefed. I believe it's set for argument next week, actually. Okay, so that is still pending. That is still pending, Your Honor, yes. And as far as I can tell, Yelp is not arguing that some of the alleged bad faith is suing Yelp without personal jurisdiction? Your Honor, I believe that also contributes to the showing of bad faith in that the Texas Attorney General didn't even attempt to allege why there was personal jurisdiction over Yelp in Texas, and the trial court readily dismissed the action in a one-line order. That's not our central contention in terms of the bad faith here. All right, so if we were to disagree with you about whether under 17.46 that we were to find that under the appropriate test the action was objectively reasonable, if we were to reject your claim that it wasn't objectively reasonable under 17.46, what would you then have to show to still show bad faith if you couldn't demonstrate that Attorney General Paxton was objectively unreasonable in bringing the action? It would also satisfy the bad faith requirement if it was brought with a retaliatory purpose. And how would you establish that? Through the ample circumstantial evidence that Yelp provided to the district court. The district court recognized it constituted a compelling case. So first, there is, again, I understand your Honor's question, sort of put aside the meritlessness of the Texas action, but even if it's not totally objectively frivolous, which we submit it is, its weakness is certainly indicative of bad faith. That's one piece of evidence. The second piece of evidence is Attorney General Paxton's press release following the action being brought against Yelp, in which he expressly called out the statements of Yelp CEOs regarding his support for abortion, suggesting fairly clearly that those sorts of statements and actually Yelp's actions with respect to abortion are the motivating factor behind this action. Third is the lack of any investigation whatsoever, any meaningful investigation into whether any consumers were misled. Essentially, the sole evidence of any investigation conducted by the Texas Attorney General's office was reviewing a single email from maybe one, possibly two CPCs. You know, counsel, attorneys general bring lots of different actions, lots of different UDAP actions, like maybe not exactly like this one, but under statutes like this one. So would any time somebody claimed that, you know, there are some merits problems here, but they don't like our company, they have a political motive for doing this, there is some kind of discriminatory aspect here that you automatically get to go into a full-blown hearing as to whether there is sufficient evidence to show something that gets you to a younger exception even in the face of an objectively reasonable claim by an attorney general? No, Your Honor, I think there would need to be some sort of showing. Again, so this is a 12B1 dismissal, so the evidence submitted that inferences have to be drawn in Yelp's favor, and I would submit that there is ample basis to conclude that this is sort of a particularly egregious example of an attorney general retaliating against a company for... So on your evidence, your view is you should have been able to go forward with full-blown discovery into the attorney general's motives, all the documents that the attorney general had gathered in the investigation because they could bear on retaliation, and basically go into all of the attorney general's investigatory and other files to be able to prove your bad-faith claim. Yet we were entitled to at least some sort of discovery, Your Honor, and this Court's decision in cases such as Laub recognized that where the facts are controverted regarding a jurisdictional issue and there's at least some basis to conclude that the jurisdictional test is met, as there certainly is here, that there should be discovery afforded. And Yelp asked for discovery. The district court didn't even address that request. That alone is basis to affirm. But again, I'd like to push back a little bit on sort of the presumption this suit wasn't objectively meritless. I take the Texas attorney general's argument to largely concede that the speech that Yelp made, the consumer warnings they provided, would need to be commercial speech in nature for the DTPA to validly be applied to it. There's really no viable argument that Yelp's statements warning consumers about a product that Yelp doesn't offer, that doesn't compete with anything Yelp does, that is essentially the exact same as the reviews in Bose, that's a Supreme Court case recognizing that speech about a speaker, you know, describing the speaker and criticizing in some ways, was fully protected speech, not commercial speech. I think the difficulty here is the significance of what Yelp is asking in the case because you're not just saying you win on the merits of this Texas case. You're saying you want a federal court to actually enjoin a state attorney general from prosecuting that case, from pursuing that case. You want to have discovery into the attorney general's thought processes or process for bringing and investigating that case. That's a difficult one because it seems to me we're going to have, if you win on this, we're going to have cases filed every week in federal court saying I do not like what that state attorney general is doing to me in that state. And in this case, you've actually prevailed in Texas. You have a Texas legal system that's not alleged to be biased against you. You're doing well there so far, and you have arguments on the merits of your claims, which you're free to raise there. So that's my broader concern with what your client's asking us to do in the case. Your Honor, this exception to Younger has been well recognized essentially since Younger was first set out. True, but it's been very narrowly applied. Narrowly applied, Your Honor, but this is the sort of exceptional circumstance in which it could be applied. And so even the retaliatory motive branch of the Younger bad faith inquiry, there's four different circuits that have established that. The Fifth Circuit, I believe, was the first back in the 70s. And there's still just a handful of cases in which the prosecuting authorities were found to have engaged in bad faith, and that's because generally district attorneys, attorney generals, they're not acting in bad faith. They're not bringing prosecutions for retaliatory motives. This is the rare case where we have an attorney general who's consistently reaching out to punish the speech of companies and others that he doesn't approve of, and in fact saying in a press release, calling out the fully First Amendment protected speech of the CEO of the company he's prosecuting, and then using that as the basis for bringing suit. And that suit, again, is objectively meritless because this could not possibly constitute commercial speech either under any decision in this circuit, in the Texas Courts of Appeal. We cited the Reynolds case. It's very clear that this is not commercial speech because Yelp is not proposing a transaction of any sort. It's describing a product offered by another party and simply warning consumers that they should check and see whether there's sort of the facts on the ground or in fact what they're being represented. So Yelp issued this consumer warning because there were concerns raised by a number of different attorney generals about the misrepresentations being made by CPCs. So Yelp is simply warning consumers, essentially buyer beware, check and see that this is in fact what you're looking for. That couldn't possibly be commercial speech. If it's not commercial speech, the DTPA does not apply, could not apply either, because it would violate the First Amendment. And so given that, there's really no way to conclude that this action was brought in good faith. It is fully objectively meritless. And that also holds true if you look at the individual counts in the actual complaint against Yelp. And so I think in these respects it closely mirrors the recent case in the Fifth Circuit, the Netflix case. That case concerned there was a somewhat controversial Netflix film called Cuties that some people believe involved child pornography. And a single Texas prosecutor brought suit. And after Netflix raised a First Amendment issue, he then multiplied the indictment, brought four separate claims against Netflix. And the Fifth Circuit said that there was a mosaic of circumstantial evidence that established that that action was brought in bad faith. And it didn't hold that the suit itself was objectively meritless, but it said one of the four indictments, one of the four counts against Netflix was clearly foreclosed because it alleged that there was child pornography associated with an actress who was verifiably over 18. It said that was one factor. A second factor was that no other prosecutor nationwide had brought any similar action against Netflix. That's also the case here. No other attorney general, no other prosecutor has challenged Yelp's use of these CPCs in any sort of court action. And then third was the timing of the suit that was brought after Netflix asserted its First Amendment rights. That's, again, the timing here is similarly suspicious in that Yelp took down its notice, six months passed, and then finally, after Attorney General Paxton returned from impeachment, without any investigation having been conducted, his first action was to announce this lawsuit against Yelp in Texas. So I think that the circumstances here closely parallel those in Netflix. And so, again, turning to the actual complaint here in Texas, there's four separate counts under the DTPA, and three of them obviously are inapplicable. So the first two are under subsections B2 and B3, and they involve causing confusion or misunderstandings of the source, sponsorship, approval, or certification of goods or services. Yelp hasn't done anything like that. That's essentially a trademark infringement type claim where there's a question as to whether a product is from one entity or another. Yelp has done nothing of the sort that could possibly violate that provision. I have a question about the standard. The no expectation of success prong of bad faith. Do you see that as coextensive with Rule 11? I think it's probably similar to Rule 11. I think the slight difference, I don't know that it needs to be so frivolous as to warrant sanctions, but because the other sort of, there can be this mosaic circumstantial type evidence of bad faith that also contributes to the conclusion that it's objectively meritless and was brought without a reasonable expectation of success. I guess sort of parsing your answer, then, you think it's something a little less demanding. We would say it's a little less, or at least, certainly if a lawsuit is frivolous in the Rule 11 sense, that would be objectively meritless, and that would establish bad faith. We think there's sort of a, that it could be a little less than the Rule 11 sanction standard if there's other evidence suggesting bad faith and that it was not actually brought to secure a valid sanction. Has Yelp sought sanctions in the Texas case? No, Your Honor, Yelp has simply, I don't know exactly what the term is in Texas, but it's moved to dismiss for lack of personal jurisdiction. It's entered a special appearance, so it hasn't done anything other than seek to dismiss for lack of personal jurisdiction. So again, so I recognize, Your Honor's question, that it's an exceptional case that could satisfy the bad faith standard, but that we submit that those circumstances are met here. So picking up on a point that Judge Press raised, I mean, given the nature of the cases that we see on this Court with frequency, I mean, it's not out of the, it's not out of question for me to expect that if something like this works, then we're going to see a case brought by folks in California challenging the Attorney General in California for enforcing gun laws or something like this, you know, in a parallel circumstance. So I'm curious, I guess I'm not clear what you think the limiting principle is if your theory here works. And I'm thinking about that because the Supreme Court, in setting out the exceptions to Younger, was really clear that these are limited exceptions. And so if your theory works, how do we keep the bad faith exception to be limited? Your Honor, the standard is high. We don't deny that. But again, an objectively meritless suit, that itself is a high standard to meet. It's only rarely met. It's met here because, again, both the First Amendment and Texas law preclude the actions being brought against Yelp. But I'm not aware of many other circumstances in which a prosecutor or an attorney general is objectively meritless. And then that's coupled, again, with the ample circumstantial evidence of bad faith. Again, you don't normally have a prosecutor or an attorney general putting out a statement that accompanies a prosecution calling out the CEO of the company for setting forth statements regarding abortion that are fully First Amendment protected and are not even the subject of the lawsuit. I think that is sort of the real exceptional circumstance here. And it's that sort of evidence that could warrant a finding of bad faith. So it won't be the sort of the mine run of prosecutions that are based on speech or that, you know, otherwise. Although there are plenty of motions to dismiss various claims brought by attorneys general that cite state equivalents of 12B6, which says, as a matter of law, this claim fails. Yeah, it is. It is objectively meritless because, as a matter of law, this claim fails. That is routine. I think what we're arguing here is it goes well beyond sort of the 12B6 Twombly-type standard. There's just obviously no way that this Texas action could proceed. Again, there's four counts. Three of them are simply categorically inapplicable to Yelp's consumer warning. And the third one, the only one they're actually, excuse me, the fourth one, the only one they're actually citing here is whether it causes confusion or misunderstanding as to affiliation, connection, or association with or certification by another. Again, none of these provisions could have any possible application to Yelp's warning to consumers. Although, of course, the district court disagreed with you. What the district court said, the district court didn't look at the actual language of the DTPA. The district court didn't consider the First Amendment at all. The district court simply said that perhaps these statements could be considered misleading. Well, I mean, but basically your claim is objectively unreasonable. Thoughtful district judge disagrees with you. Well, no, Your Honor. The district court didn't consider sort of the key factors that actually foreclosed this claim. So even assuming Yelp's speech. The district judge, in your view, just got it wrong. Well, yes, Your Honor. So his decision was objectively unreasonable. Well, no, Your Honor. The district court recognized that we were very close to the line of bad faith, and she was incorrect in concluding that we had.  She was objectively unreasonable. This was Judge Freeman, right? It was Judge Thompson. Judge Thompson. Sorry. Got it all wrong. That's all right, Your Honor. But the point is, no, she was not objectively unreasonable. She recognized that this lawsuit likely has relatively little merit, and she recognized that there was substantial evidence of bad faith. She seemed to focus on the fact that our evidence was circumstantial, and she said it was therefore not concrete. But that's not the. Well, she also said whether the first notice is true or misleading is open to interpretation. Yes, Your Honor. But even if that's right, we submit that's wrong. But even if that's right, it doesn't answer the question of whether the suit is objectively meritless, because it's clearly foreclosed by the First Amendment. Can I ask you quickly? Did the district court apply the test, you know, facially meritless? Yes, Your Honor. Do you agree that's a sensible test? You just think you meet it, or do you disagree with the test? We think we meet that test, Your Honor. But that's one of the two possible tests for showing bad faith. No, I understand that. But how about on this objectively unreasonable, you know, the merits of the lawsuit and whether they're frivolous or whatever we're going to label this, do you think facially meritless is a fair way to describe that test? Yes, Your Honor. I think facially meritless is a fair way to describe it. If this Court has no further questions, I'd reserve the remainder of my time for rebuttal. All right. Thank you. I apologize for my voice. Judge Bennett, Lenora Pettit for Attorney General Paxton, and may it please the Court. It was Yelp's burden to prove bad faith. And as the district court properly found, as Judge Bennett just noted, that the truth of their 2022 descriptions of crisis pregnancy centers was open to interpretation. They can't meet that burden by speculating as to the subjective motivations behind the Texas Attorney General's underlying fraud claims. Since we haven't heard anything else from Yelp today, we respectfully suggest that the easiest way to resolve this appeal is to affirm the district court's dismissal under Younger. And the alternative the court should hold, that California is not the appropriate place to be litigating the merits of the Texas Attorney General's efforts to enforce Texas law in Texas. Starting with a number of the comments, since there doesn't seem to be a dispute that the general standard for Younger has been met here, unlike the last case that we heard this morning, they start turning to a number of the bad faith claims. And I've heard a lot of conflating two different concepts. And, Judge Brass, I think this goes to your point at the end about the standard between a claim that is being brought in objectively bad faith or facially invalid and one that is brought for a retaliatory purpose. Respectfully, in this particular context, those two topics often merge, because as their primary authority, the Wilson case on page 1388 of that decision, noted that the difference between that there is a difference between lawful deterrence and retaliation. And the difference between those two is often, and I would respect almost always, about whether or not you have an objectively reasonable basis to bring this claim. Counsel, whatever the test for that part that we adopt, objectively reasonable or something similar to that, let's assume that the particular state actor, in this case General Paxton, met that. But let's say there was strong evidence that the reason the state actor brought the suit was because the business that they were suing had contributed to his political opponent. Would that work? I respectfully would suggest it probably would not, but I would need to know some more about the facts of that particular allegations. What about if it was brought because of the race of the business owner? That gets into a very tricky question. And the reason why I was going to say that I need more facts about this is because there are instances, and race I think would be an instance where that would be inappropriate, a number of the Court's sister circuits have said. But the problem that I see here gets into questions of immunity that haven't really been briefed here. And it goes to questions of malicious prosecution. And I point this Court to the Neves decision from the Supreme Court from a few years ago and the Gonzalez case that followed up on it that acknowledged that there are times when First Amendment protected activity can be legitimate considerations in determining whether to pursue someone. And so, therefore, that particular case required, typically speaking, there to be no probable cause because that one involved an arrest as opposed to a lawsuit. But I would suggest that that's relatively similar to — What if, to pick up on one of Judge Forrest's questions, what if the lawsuit was brought and there was clear evidence of it because the entity involved was a vocal supporter of Second Amendment rights and the Attorney General decided, you know, we never bring these cases. Yeah, it's objectively reasonable, but there was strong evidence that the Attorney General only brought the case because the entity had supported Second Amendment rights. And then I would think you would — Does that work? I believe it would, under that set of facts. And I would point this Court to the Gonzalez v. Trevino case that I just mentioned that talks about the exception to the rule that you need to have the probable cause for a retaliatory arrest claim, which goes to — and my friend complained about the phrase concrete, the phrase that the U.S. has — the U.S. Supreme Court has suggested is objective. And there, if there is a close comparator that did not involve in a — that was not involved in a First Amendment claim who was First Amendment protected or in that instance Second Amendment protected activity that was not prosecuted for the same activity, then that would be evidence of retaliation and an improper motive. We lack that here because as both the Attorney General and Yelp admitted to the district court, and I would point this Court to page 29 and 31 of the excerpts of the record, this is a unique case. There are no similarly situated individuals, so there isn't that objective evidence that allows us to get past the presumption of prosecutorial regularity. Instead, to the contrary, my friend noted the mothers and unborn children's case from 1988. When crisis pregnancy centers were holding themselves out as abortion clinics, which was the facts of that case, the Attorney General did, in fact, prosecute them, and that is the only comparator they pointed to. And I think that's particularly important in responding to a number of my friend's arguments about whether or not this is commercial speech within the — within the definition of the DTPA as well as the First Amendment. To start with, the fact that we're sitting here debating about the meaning of a Texas provision goes to our personal jurisdiction argument about why this should be litigated in Texas. But leaving that aside for a moment, the mothers and unborn children's decisions found that the type of activity at crisis pregnancy centers was commercial in nature for the purposes of Texas State law. And what is good for the goose is good for the gander. If Yelp is talking about the types of activities that were commercial, then it is commercial speech for the purpose of the DTPA. And I don't hear them to be challenging it, and to the contrary, I hear them to be relying upon that decision. It's also consistent with the First Amendment under Central Hudson, and I would point this Court to, I believe it's page 531 of that decision, where it's talking about the economic interests of the people involved. And my friend, immediately after saying it doesn't meet the definition for commercial interests, starts talking about how it's — how his client is talking about the products of another. That is the economic interest of another. It doesn't become any less commercial just because Yelp is disparaging somebody else's products, just because they aren't proposing a transaction of their own, as I believe the way that his test was running. So it is commercial for both the First Amendment and the Texas law perspective, which gets us to the question about whether or not it is open to interpretation. And we think that it was misleading. And my friend also pointed to the fact that we said it was literally true. The actual full text of that sentence is literally true at least as to some of them. And that's really what's problematic about a lot of this, what's going on in this case, is they made a generalized statement about a — a spectrum of businesses, and they put it on every single business's page, even when that — one of those businesses came back and said, what you're saying about me is not true. And that — and that particular business complained to the Texas attorney general. The Texas attorney general looked into the issue, as the district court found. Now, the district court, who is very clearly far from sympathetic to my client, acknowledged that it was a thin investigation, but unlike what my friend just said, not a nonexistent one, which satisfies whether or not this was brought in bad faith. There was an investigation here. It was — it was brought about statements that are open to interpretation, and it was brought in a larger context that I think is important in analyzing the bad faith question, because — Was the district court right that the only evidence was that the State corresponded with only one or two CPCs? The only evidence that's currently in the record is the — is the declaration of Mr. Hanlon, in which he described how he communicated with those particular entities, and that comes to a very tricky question, and it goes to a number of the questions the court asked about the implications of Yelp's argument, because to describe much more than what Mr. Hanlon put in here gets into really tricky privilege questions. And if this Court is going to start asking every time a State attorney general brings a fraud lawsuit what their evidence is going in, it's going to be an inquiry that's never going to end. And respectfully to my friend, this is the second time I've argued one of these cases in a month. They're a lot more common than he seems to think, and if this Court were to accept, particularly to allow wide-ranging discovery on allegations like this, you're never going to finish. What's the other case you're referencing that you argued this month? Media matters in the D.C. Circuit, which was the equivalent of the Twitter case that I heard you guys talking about a few minutes ago. But any time a fraud — because the question of whether or not it is retaliation for a First Amendment-protected activity and whether or not it is deterrence for fraud is a very close question of fact in many instances. It is a question that would — that — it is an allegation that could be made in any case. And that's why the Neves Court set such a high standard in a retaliatory arrest context, which we suggest ought to be at least as high in retaliatory prosecution, which is effectively what there is today. Is the media matter just because, you know, when someone raises what's pending in another court, I'm always trying to make sure there's not some other lawsuit out there that's relevant to what we're doing. Is that case of all this civil investigative demand like a request for documents, just like in the Twitter versus Paxton? Yes, Your Honor. Okay. So it's a little different than what we have here? Yes. It is a little different in the sense that we have not yet gotten to the lawsuit aspect of it. And then that — so the younger — the younger did not apply there. It's a very, very close analog to Twitter. But the same general allegations are present, which is that the Attorney General doesn't like something I said in public, and so therefore he's retaliating against me, as opposed to the Attorney General is — and that's the plaintiff's allegation. Our allegation is you said something that was fraudulent in public, and therefore we are bringing a fraud claim against you. And those are two very, very similar things that get into difficult questions of fact, and why this — and the Federalism concerns that are behind the younger line of decisions say that the ones who should be resolving those questions, as long as the plaintiff has a legitimate, reasonable way to raise them. And as Your Honor pointed out, they do. They're actually succeeding at the moment in Texas. We think that the trial court has misapplied Texas law. And I would like to clarify one thing. The fact that this is a one-sentence order in the Texas trial court is not an indication about what — whether the trial court thought this case was frivolous. They have not — and they did not actually allege personal jurisdiction — the lack of personal jurisdiction as a basis for their younger argument. A one-line sentence — one-sentence order like this is common in State court. In fact, it's very rare to actually get a reasoned opinion. So it just says that the court concluded there was no personal jurisdiction. But getting — but going back to the deterrence versus retaliation, Younger stated on — I think it's about page 43 of its opinion that the standard or that the exceptions need to be rare because the Federal — because our Federal system depends on the notion that the State and the Federal government are different sovereigns, and the system works better when they can pursue their own — their own actions and their own processes without interference with each other. The allegations that Yelp brought here can be brought in most other cases. And tellingly, a lot of their — of their cases that they cite to show that this is bad faith all start with the presumption that the speech at issue is true. That is true for Bartnicki. That is true for Daily Mail. It is true for quite a few of their other cases, actually. So those are just in — those are just in opposite because our dispute here is where or not where you should be litigating the question about whether they're true. And under Younger, we submit that question is Texas. We also submit that that question is Texas for personal jurisdiction reasons because, as this Court has recognized in a number of different instances, including Thomas P. Gonzales, that the simple sending of a letter is insufficient to establish personal jurisdiction. In their reply, Yelp responded, well, it's not just a letter. It's also a lawsuit. But there are a lot of different doctrines that that — that that is going to run smack into, for example, Norah Pennington, the Anti-Injunction Act, Younger itself, if you're all of a sudden establishing personal jurisdiction based on something that's immediately going to implicate abstention. Plus, it's not actually all that different for the purposes of the chill. And this goes back to the Twitter and the So unless the Court has any particular questions on the personal jurisdiction, I'm just going to touch one point on the timing issue that my friend made a big deal of about the fact that this was right after General Paxton was acquitted from his impeachment. And their own timeline doesn't work. They point to the fact that Mr. Hanlon said that he knew on September 1st of last year that we were going to sue. Well, Attorney General Paxton was legally unable to make any decisions on behalf of Texas on September 1st, because he was not acquitted until September 16th and was suspended from — from performing his duties. So they don't — they — the complaint that if this were really a real investigation, Attorney General Colmanaro would have continued it, it appears, based on their theory, that she did. But the most important thing here is that we're sitting here speculating about why and who — and who did what. And that is not sufficient to bring this case within the narrow confines of the Younger exemption. Mr. Siegel referenced a few times Attorney General Paxton's press release. Do you want to address that? Certainly, Your Honor. So the press release very, very strongly stated that he — that the Texas Attorney General's office recognized the CEO's ability to — and right to say whatever he wants about abortion. And as my friend acknowledged, that statement isn't — isn't the basis of this lawsuit. It was just a statement in a press release. What the press release also says is that the — the — he — what he cannot do is to lie about these facilities. And we have alleged — have alleged that he has — that they have done so, that they have made misleading statements both that are actually literally false as to facilities that have medical care and misleading as to others. And that is the basis of our lawsuit. And I can go into really briefly why we think that those are misleading, including the fact that literally every gynecological clinic would appear to be — would appear to lack — provide limited medical services under the definition Yelp is putting forward, because about the same time that they issued their original notice, the so-called Trigger brand in Texas went into effect, and so nobody can provide abortion. So if abortion — if providing — if providing abortion is necessary to provide medical services, nobody's doing it. And that can't really be true. But by — by putting these particular statements on the — on the pages of facilities of CPCs, they're saying CPCs are doing something other than not providing abortion. And that's misleading, if not entirely false. If there are no other questions, we respectfully request you affirm. Thank you.  Counsel, we'll give you two minutes. Thank you, Your Honor. So just a few points. First, I — on the objectively meritless question, so I took counsel's argument to be what's good for the goose is good for the gander. That's their take on commercial speech, and effectively that because Yelp's speech affected the commercial interests of CPCs, that makes it commercial speech. That's so far removed from the actual doctrine on commercial speech that it again confirms the objective meritlessness of this suit. That CPC's advertisements are commercial speech is — is well established. That Yelp's statements about the product of another provider are not commercial speech is also well established. It's the Boe — Boe's case, Lowe, this Court's decision, IMDb. There's any number of cases that foreclose that as a matter of clearly established First Amendment law. It's a Federal question that Federal courts are certainly well qualified to — to hear and decide. Second, on — on the question whether this was retaliatory, I heard counsel acknowledge that if there was evidence that similarly situated individuals are treated differently, that — that would be basis for finding retaliatory motive. Well, there is, and we've cited in our brief that when Attorney General Paxton agrees with the speech of parties, like he did in the 303 Creative case, we submitted an amicus brief arguing that the — simply because the — the purveyor of a website had a commercial interest in selling those websites didn't make it unprotected speech. He — he makes that argument. He knows that that — that law is out there. But nevertheless, when Yelp does the same sort of speech, he condemns it and seeks to — to bring a State court action. That, again, confirms the retaliatory motive here. And at the very least, even if the — the evidence submitted by Yelp in the district court proceeding didn't clearly establish the bad faith of this action, there's at least enough to — to withstand a motion to dismiss to entitle Yelp to — to discovery. Again, this — this Court's decisions in Laub and — and other similar cases make clear that when there's controverted facts, facts that — that — that if proven could actually lead to a conclusion of bad faith, discovery is warranted. And so counsel, in her argument, even referenced some of those facts that — that could be warranted for discovery here, including sort of the nature of the decision making with respect to the investigation. There's a single declaration in the record here from Hanlon in which he says at — at the prosecution against Yelp would go forward. It's not really clear who informed him or why. It certainly is indicative of bad faith that the person who was purportedly doing the investigation was not even aware of whether that investigation had led into — led to anything or would result in an actual prosecution against Yelp. If the Court has no further questions, we ask that it reverse. All right. I thank counsel for their arguments. And the case just argued is submitted. With that, we are done for the day.
judges: BENNETT, BRESS, FORREST